**ATLAS CHEMICAL INDUSTRIES, INC., Plaintiff,**

v.

**MORAINE PRODUCTS, INC., Defendant.**

**Civ. A. No. 35222.**

United States District Court,
E. D. Michigan, S. D.

Nov. 5, 1973.

Miller, Canfield, Paddock & Stone, Detroit, Mich., for plaintiff.

Cullen, Settle, Sloman & Canter, Detroit, Mich., for defendant; Merriam, Marshall, Shapiro & Klose, Chicago, Ill., of counsel.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is the continuation of an action filed by the licensee of Patent No. 3,422,189. Last year this court declared the patent to be invalid for prior use. 350 F. Supp. 353 (E.D.Mich.1972). Costs and expenses were awarded to the defendant in prosecuting the patent since January 1963, in prosecuting interference proceedings since January 1963, and in defending the patent against alleged infringers. The defendant was also awarded royalties from the date of termination of the payment of royalties to October 27, 1972, the date of this court's Memorandum Opinion and Order.

This proceeding is to determine the amounts owed by Atlas to Moraine. Several issues have presented themselves for resolution. Atlas insists Moraine fraudulently procured the patent. This court has already found as fact that allegation to be untrue, and the offer of proof regarding Moraine's alleged fraud is rejected, it being mostly irrelevant and raising no new issues not already considered by the court a year ago.

When this lawsuit was originally filed the plaintiff offered to make the royalty payments into an escrow account. This arrangement was so ordered by United States District Judge Talbot Smith, to whom this case was originally assigned;

and at the suggestion of Atlas, certain funds determined by Atlas to be the amount due under the license agreement, if liability was established, were paid to the escrow agent.

The issues requiring resolution at this hearing are (1) whether this court can award the funds in escrow to the defendant Moraine, and whether it can and shall require Atlas to supplement the amount paid into escrow because of an alleged non-compliance with the royalty contract between Atlas, the licensee, and Moraine, the holder of the patent and the licensor, and (2) what is the appropriate amount of the attorney's fees and costs.

Licensees are often the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. It is clear that the licensee is not to be muzzled, for fear the public may be required to pay tribute to the would-be monopolist. Lear v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1968). The free use of ideas should be encouraged for the economic well being and strength of the nation.

Suppose, however, that the licensee wants to contest the patent on the one hand, but on the other hand, and at the same time, wishes to enjoy the fruits of his license, both before a determination of patent validity or invalidity and afterwards in the event the patent is held to be valid? Among other things he wishes to enjoy an exclusive license to deny others the right to use the patent in question, or to require the licensor to defend the patent against alleged infringers, while at the same time the licensee is challenging the patent. He also might desire to have the right of continued use of the patent after litigation ends. So as a result of any one or more of the reasons the licensee may not terminate the license but continues to make the royalty payments called for in the agreement. The Sixth Circuit Court of Appeals has made more than abundantly clear that the licensor in such a case will not be required to repay the royalty payments should the patent ultimately be determined to be invalid.

Troxel v. Schwinn, 465 F.2d 1253 (6th Cir. 1972).

The licensee should not be able to avoid the thrust of the Troxel decision by placing the royalty payments into an escrow. If the licensee wishes to continue enjoying the fruits of their relationship he should continue to tender the *quid pro quo* and should not be permitted to recoup such payments when the patent is declared invalid. This is, of course, not contrary to the Lear decision which in essence was addressed to the issue of licensee estoppel to challenge a patent and the abolition of that ancient doctrine. And it is consistent with the Troxel mandate against recoupment of payments made by the licensee.

The parties have bitterly contested whether or not the proper amount was paid into the escrow. It is beyond the scope of this court's authority to order additional funds paid into that escrow even if it were true that Atlas had not delivered the full and proper amounts thereto. This is made abundantly clear by the disposition of Schwinn's counterclaim in Troxel v. Schwinn, *supra*. This would become an issue only if the patent has been declared to be valid and a question was raised as to whether the license agreement had been performed, both as to liability under that agreement and as to the right of the licensor to cancel the agreement. It is not relevant in the context of this case, where a patent is declared not valid.

I find the amount held by the escrow agent to be $278,179.61, plus interest in the amount of $13,628.90. This totals $291,808.51.

The parties have agreed, by stipulation, that the amount of Moraine's costs and expenses are $139,495.40.

Judgment, in accord with this Memorandum, is to be entered in favor of Moraine and against Atlas as follows: (1) the parties are directed to require the escrow agent to pay to Moraine the funds in the escrow to date, $278,179.61, and the interest thereon, $13,628.90, to April 9, 1973, and all interest which ac-

crues to date of payment; and (2) Moraine's costs and expenses as agreed in the stipulation in the amount of $139,495.40.

So ordered.